FILED
COURT OF APPEALS
DIVISION II

2013 SEP 17 AM 8: 41

STATE OF WASHINGTON

BY_____
        DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Detention of: | No. 43320-6-II |
| | UNPUBLISHED OPINION |
| JM, | |
| Respondent. | |

BJORGEN, J. — JM[1] appeals a trial court order involuntarily committing him to Western State Hospital (WSH) for up to 180 days of mental health treatment, asserting that (1) the trial court lacked statutory authority to order 180 days of mental health treatment solely on a determination that JM was gravely disabled under former RCW 71.05.280(4) (2008), and (2) the State failed to prove by clear, cogent, and convincing evidence that JM was gravely disabled. Because the trial court exceeded its statutory authority by ordering JM involuntarily committed for up to 180 days solely on a determination that he is gravely disabled and because the trial court's factual findings do not support its conclusion that JM is gravely disabled, we vacate the trial court's involuntary commitment order.

## FACTS

On January 25, 2012, a trial court found JM incompetent to stand trial and dismissed without prejudice criminal charges against him. The trial court ordered JM to be committed to WSH for a mental health evaluation and to permit filing of a petition for civil commitment. On

---

[1] Under General Order 1992-3 of Division II, *In re the Matter of All Appeals of Persons Subject to Involuntary Commitment Proceedings*, RCW 71.05 (Wash. Ct. App.), the clerk shall recaption an appeal from an involuntary commitment proceeding by using the subject's initials instead of his or her name.

February 23, 2012, WSH staff members Jolene Simpson, Ph.D. and Daniel Ruiz-Paredes, M.D. filed a petition to involuntarily treat JM for up to 180 days. The petition alleged that, "[a]s a result of a mental disorder, [JM] . . . is gravely disabled" and "is in custody after having been determined incompetent pursuant to RCW 10.77 and has committed acts constituting a felony (although criminal charges have been dismissed), and . . . presents a substantial likelihood of repeating similar acts . . . ." Clerk's Papers (CP) at 2.

The trial court held a hearing on the petition for involuntary commitment on March 1, 2012. At the start of the hearing, counsel for the petitioners indicated that the petitioners had agreed to seek JM's involuntary commitment solely on the basis that JM was gravely disabled, under former RCW 71.05.280(4), and would not pursue involuntary commitment on the ground that JM was determined to be incompetent to stand trial for acts that would constitute a felony, under former RCW 71.05.280(3).

At the hearing Simpson testified that, in her opinion, JM suffered from a mental disorder, "mainly schizophrenia, unspecified type." Report of Proceedings (RP) at 5. Simpson stated that JM "becomes tangential and disorganized" when speaking and that he "evidences delusional beliefs such as thinking that he was murdered in the past or thinking that the Top Gun group have implanted a device in his eardrum and communicate with him in that manner." RP at 5. When asked about JM's judgment, Simpson stated that JM's judgment was "impaired based on his symptoms of mental illness." RP at 8. When asked to describe JM's cognitive and volitional control, Simpson responded, "Well, he's been pleasant and cooperative on the ward, but his level of disorganization in his thoughts would lead me to believe that there's an impairment in [his]

volitional control or his cognitive control of his own behaviors." RP at 8. Finally, when asked

to specify the basis for her opinion that JM is gravely disabled, Simpson replied:

> He talks about these various places he could go to receive services. He said he could go to DESC [Downtown Emergency Service Center] to get housing and then he talked about his father working at DESC, which I was unable to verify. So he has some of these plans laid out for where he could live and then in the event he couldn't go to DESC, he could go to Union Gospel Mission, but with his level of disorganization it would be very difficult for him to follow through on these plans to get his needs met.
>
> Additionally, since his level of insight into his mental illness varied, even within a couple questions, it's unlikely that he would continue with his medications or know how to move forward with getting them, obtaining them and staying on them.

RP at 9.

JM testified on his own behalf. When asked to provide his name, JM said it was "Davier

William Washington. The [JM] is an accident when I was a little kid. I won't answer about

that." RP at 12-13. JM testified that he wanted to use his social security/disability income to

rent an apartment but that he initially planned to seek housing through the DESC or the Union

Gospel Mission. Regarding his willingness to take medication, JM testified, "Well, it's been

about seven years, that I've been on medication, and I guess it is not too much of a supplement,

but I don't have a problem taking the medication as long as the medication is not too harmful."

RP at 14.

Immediately following JM's testimony, the trial court stated, "Sir, given the testimony I

have heard today, I do feel it's in your best interest to be at the hospital at this time. I am going

to make a finding of grave disability only for an additional period of up to 180 days." RP at 19.

No. 43320-6-II

Following the hearing, the trial court entered a written order involuntarily committing JM to WSH for up to 180 days. Other than a brief jurisdictional statement, the entirety of the trial court's findings of fact state:

> **Findings:** The Court finds by [ ] a preponderance of the evidence
>                                     [x] clear, cogent and convincing evidence
> that the Respondent:
>         is delusional (murdered in past [and] other concerns) disorganized, impaired judgment [and] insight. [H]as had contact with law enforcement [and] mental health hospitalization, some improvement since admission.
> **Diagnosis:** Schizophrenia Unspecified
> And that, as a result of a mental disorder, the Respondent presents:
>         [ ] a likelihood of serious harm to others;
>         [ ] a likelihood of serious harm to self;
>         [x] is gravely disabled;[2]
>         [ ] was taken into custody after having been determined incompetent pursuant to RCW 10.77 and has committed acts constituting a felony (although criminal charges have been dismissed) and as a result of a mental disorder, presents a substantial likelihood of repeating similar acts.
> **Less restrictive Alternatives:** Less Restrictive Alternatives to involuntary detention
>         [ ] are
>         [x] are not
> in the best interests of the Respondent or others.

CP at 23. The trial court's preprinted conclusion of law states, "The Respondent shall be detained for involuntary treatment or shall be treated under less restrictive alternatives per the Order Detaining Respondent . . . below." CP at 24. The court ordered JM to be "involuntarily detained . . . for up to 180 days [for] involuntary treatment at Western State Hospital." CP at 24. JM timely appeals the trial court's involuntary commitment order.

---

[2] Although denoted as a finding of fact, because this is a legal conclusion regarding the ultimate issue of whether JM is gravely disabled, we treat it as the trial court's conclusion of law. *In re Det. of M.K.*, 168 Wn. App. 621, 624 n.4, 279 P.3d 897 (2012).

4

No. 43320-6-II

## ANALYSIS[3]

### I. 180-DAY COMMITMENT ORDER EXCEEDED STATUTORY AUTHORITY

JM first contends that the trial court acted outside its statutory authority by committing him to 180 days of involuntary treatment solely on a determination that he was gravely disabled. We agree. Former RCW 71.05.320(1) (2009) provides:

> If the court or jury finds that grounds set forth in RCW 71.05.280 have been proven and that the best interests of the person or others will not be served by a less restrictive treatment which is an alternative to detention, the court shall remand him or her to the custody of the department or to a facility certified for ninety day treatment by the department for a further period of intensive treatment not to exceed ninety days from the date of judgment. If the grounds set forth in RCW 71.05.280(3) *are the basis of commitment*, then the period of treatment may be up to but not exceed one hundred eighty days from the date of judgment in a facility certified for one hundred eighty day treatment by the department.

(Emphasis added.) The construction of a statute is a question of law that we review de novo. *In re Det. of Brock*, 99 Wn. App. 722, 724, 995 P.2d 111 (2000). When construing a statute, we give effect to the plain and ordinary meaning of the language used by the Legislature. *In re Det. of T.A.H.-L.*, 123 Wn. App. 172, 183, 97 P.3d 767 (2004). "As civil commitment statutes authorize a significant deprivation of liberty, they must be strictly construed." *In re Det. of J.R.*, 80 Wn. App. 947, 956, 912 P.2d 1062 (1996).

Under former RCW 71.05.320(1)'s plain language, the trial court may order an individual to be involuntarily committed for up to 180 days only if "the grounds set forth in RCW

---

[3] Although not raised by the petitioners/respondents, we note that JM's appeal from the trial court order involuntarily committing him to WSH is not moot even though JM's ordered period of involuntary commitment has expired. *See In re Det. of M.K.*, 168 Wn. App. at 626 ("[E]ach commitment order has a collateral consequence in subsequent petitions and hearings, allowing us to render relief if we hold that the detention under a civil commitment order was not warranted.") (citing RCW 71.05.212, .245).

5

No. 43320-6-II

71.05.280(3) *are the basis of commitment*." (Emphasis added.) Former RCW 71.05.280

provides in relevant part:

> At the expiration of the fourteen-day period of intensive treatment, a person may be confined for further treatment pursuant to RCW 71.05.320 if:
>
> . . . .
>
> (3) Such person has been determined to be incompetent and criminal charges have been dismissed pursuant to RCW 10.77.086(4), and has committed acts constituting a felony, and as a result of a mental disorder, presents a substantial likelihood of repeating similar acts. (a) In any proceeding pursuant to this subsection it shall not be necessary to show intent, willfulness, or state of mind as an element of the crime; or
>
> (4) Such person is gravely disabled.

Here, the petitioners initially sought JM's involuntary commitment under both former

RCW 71.05.280(3) and (4), but indicated at the start of trial that they were pursuing involuntary

commitment only under former RCW 71.05.280(4). The trial court ordered JM's involuntary

commitment only under former RCW 71.05.280(4). Further, because the trial court did not order

JM involuntarily committed under former RCW 71.05.280(3), it did not enter any factual finding

indicating that JM "present[ed] a substantial likelihood of repeating similar acts [constituting a

felony]." Accordingly, the grounds set forth in former RCW 71.05.280(3) were not the basis of

JM's involuntary commitment and, thus, the trial court exceeded its statutory authority when it

ordered JM involuntarily committed for up to 180 days, contrary to the plain language of former

RCW 71.05.320(1).

## II. SUFFICIENCY OF FINDINGS TO SUPPORT CONCLUSION THAT JM IS GRAVELY DISABLED

Next, JM contends that clear, cogent, and convincing evidence did not support the trial

court's conclusion that he was gravely disabled and in need of involuntary mental health

treatment. We do not reach the issue of sufficiency of the evidence, but as an alternative ground

6

for reversal, hold that the meager findings of fact are insufficient to support the trial court's conclusion that JM is gravely disabled.

Where, as here, a trial court has weighed the evidence, our review is generally "limited to determining whether substantial evidence supports the findings and, if so, whether the findings in turn support the trial court's conclusions of law and judgment." *In re Det. of LaBelle*, 107 Wn.2d 196, 209, 728 P.2d 138 (1986). Under former RCW 71.05.280(4), a trial court may order an individual involuntarily committed for mental health treatment if, as a result of a mental disorder, the individual is gravely disabled. RCW 71.05.020(17) defines "gravely disabled" as:

> a condition in which a person, as a result of a mental disorder: (a) Is in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety; or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety.

Because the trial court's involuntary commitment order does not indicate which definition the trial court relied on in finding JM gravely disabled under the statute, we address whether the findings supported the trial court's conclusion that JM was "gravely disabled" under either definition.

A.    RCW 71.05.020(17)(a)

When proceeding under the first definition of "gravely disabled," RCW 71.05.020(17)(a), a petitioner

> must present recent, tangible evidence of failure or inability to provide for such essential human needs as food, clothing, shelter, and medical treatment which presents a high probability of serious physical harm within the near future unless adequate treatment is afforded. Furthermore, the failure or inability to provide for these essential needs must be shown to arise as a result of mental disorder and not because of other factors.

7

*LaBelle*, 107 Wn.2d at 204-05.[4] Here, the trial court found that JM is "delusional[,] . . . disorganized, [has] impaired judgment [and] insight. [H]as had contact with law enforcement [and] mental health hospitalization, [and has had] some improvement since admission." CP at 23. These sparse findings of fact, however, fail to address whether petitioners presented clear, cogent, and convincing evidence that JM "[i]s in danger of serious physical harm resulting from a failure to provide for his . . . essential needs of health and safety." RCW 71.05.020(17)(a). Thus, the findings are insufficient to support the trial court's conclusion that JM is gravely disabled under RCW 17.05.020(17)(a).

B.      RCW 71.05.020(17)(b)

When proceeding under the second definition of "gravely disabled," RCW 71.05.020(17)(b), a petitioner must

> provide a factual basis for concluding that an individual "manifests severe [mental] deterioration in routine functioning." Such evidence must include recent proof of significant loss of cognitive or volitional control. In addition, the evidence must reveal a factual basis for concluding that the individual is not receiving or would not receive, if released, such care as is essential for his or her health or safety. It is not enough to show that care and treatment of an individual's mental illness would be preferred or beneficial or even in his best interests. To justify commitment, such care must be shown to be *essential* to an individual's health or safety and the evidence should indicate the harmful consequences likely to follow if involuntary treatment is not ordered.
>     Furthermore, the mere fact that an individual is mentally ill does not also mean that the person so affected is incapable of making a rational choice with respect to his or her need for treatment. Implicit in the definition of gravely disabled under [former] RCW 71.05.020(1)(b) is a requirement that the individual is *unable*, because of severe deterioration of mental functioning, to make a rational decision with respect to his need for treatment. This requirement is necessary to ensure that a causal nexus exists between proof of "severe

---

[4] In *LaBelle*, our Supreme Court addressed former RCW 71.05.020(1) 1979, which the Legislature has since recodified at RCW 71.05.020(17) without substantive changes.

No. 43320-6-II

deterioration in routine functioning" and proof that the person so affected "is not receiving such care as is essential for his or her health or safety."

*LaBelle*, 107 Wn.2d at 208.

Again, the trial court's sparse findings fail to articulate that JM is unable to make a rational decision with respect for his need for treatment and fail to articulate any causal nexus between evidence of JM's mental disorder and proof that the mental disorder impairs JM's ability to provide for his own health and safety. Accordingly, although it may be in JM's best interest to remain at WSH for mental health treatment, we hold that the trial court's findings do not support its conclusion that JM is gravely disabled under RCW 71.05.020(17)(b).

The trial court erred in committing JM to 180 days' treatment on the basis of grave disability alone. Additionally, the court's findings of fact do not support its conclusion that JM is gravely disabled. Therefore, we vacate the trial court's March 1, 2012 order involuntarily committing JM to mental health treatment at WSH.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, J.

We concur:

PENOYAR, J.

WORSWICK, C.J.

9